IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

K. GOLDSMITH, )
)
Plaintiff, )
) Civil Action No. 2:13-cv-00478
v. )
) Judge Mark R. Hornak
CBS TV BROADCASTING, PITTSBURGH, )
INC., et al., )
)
Defendants. )

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Kenneth Goldsmith is no stranger to the Court system[1], and he has employed the processes of this Court, and the United States Bankruptcy Court[2] in a seemingly endless campaign against his former landlord, Ms. Constance Lampenfeld Lucey ("Lucey"), various others that are seemingly family and business relations of hers, and now, a local television station and certain of its personnel. He was permitted by this Court to file this action *in forma pauperis*, and the Court has already once entered a Memorandum Opinion discharging its statutory obligation to consider whether such an IFP Complaint can pass pleading muster under even the most permissive of standards. ECF No. 2.

Now before the Court is an Amended Complaint, ECF No. 29, that this Court permitted Mr. Goldsmith to file when it concluded that it was duty bound under applicable Third Circuit law to permit him yet another try at stating his case after rejecting his first Complaint. Further, he has now also filed several complexly-labelled motions that, boiled down to their substance, are

---

[1] *See* 11-cv-747, 12-cv-517, 12-cv-589, 12-cv-684, 12-cv-1315, and 14-cv-789.

[2] *See* 12-bk-21157.

1

requests that the United States Marshal, at government expense, execute service of process on his behalf, along with a motion to permit yet another amendment of his *pro se* Complaint.[3] ECF No. 72.

For the reasons that follow, most (but not all) of Mr. Goldsmith's claims will be dismissed with prejudice. Moreover, the Court will order that the Marshal make service of the Documents at ECF Nos. 29, 71 and 72 in this civil action upon the then-remaining Defendants.

I. **BACKGROUND**

The Court has addressed the core of Plaintiff's disputes in previous Memorandum Opinions, ECF No. 2, and ECF Nos. 2, 4 in 12-cv-684, and they will not be set out further except as specifically necessary for these purposes. Mr. Goldsmith now claims that he is a hoarder. Apparently in response to the accumulation of large volumes of personal possessions in his apartment, and his use of the living quarters of that apartment as a repository of all sorts of personal property, and waste, including human waste, he was evicted by Lucey. He has apparently challenged that action in the Pennsylvania state courts, and repeatedly in the Bankruptcy Court, all to no avail. He has sought, and received, an emergency hearing from this Court in response to his assertions of its necessity, with the Court concluding upon subsequent hearings in open court that such efforts were simply yet another attack by him on his forced removal from a litter-strewn apartment.

Now, because it appears that there was a news story on KDKA television about his eviction, he claims a number of violations of federally-protected rights, along with state-law torts, by Lucey, various others he claims were associated with her, representatives of the Allegheny County Sheriff's Office (including the now-deceased Deputy in charge of the Real

---

[3] To be safe, the Court has also considered the contents of that request, and its attachments, in making the rulings contained herein.

2

Estate Division of that office), the Allegheny County Health Department, and a number of employees of KDKA-TV along with its corporate owners. He also seeks to sue several people who appear to have no readily discernible connection to any of these matters.

## II. **STANDARD OF REVIEW**

This Court has the duty under 28 U.S.C. §§ 1915(e)(2) and 1915A[4] to consider, again, whether his now Amended Complaint, and even his latest proposed amendment, state claims for relief under federal law, and to permit the claims that do to proceed here, and to dismiss all others.[5] In the past, this Court has explained that the legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) or § 1915A(b)(1) is identical to the legal standard used when ruling on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Detar v. U.S. Gov't*, No. 13-1499, 2014 WL 517715, at *2–3 (W.D. Pa. Feb. 7, 2014) (setting forth in detail the requirements of 28 U.S.C. §§ 1915). But before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *Id.* (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)). While a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *Detar*, 2014 WL 517715, at *2–3.

---

[4] This provision is applicable due to Plaintiff's claims against one or more government officials.

[5] Subject matter jurisdiction is a big deal in this case. Except perhaps as to KDKA-TV's owner, CBS, there is no diversity jurisdiction, 28 U.S.C. § 1332, revealed in Plaintiff's pleadings. As to all other Defendants, federal jurisdiction can exist only if there is federal question jurisdiction, 28 U.S.C. §§ 1331, 1337, or an appropriate basis to assert supplemental jurisdiction under 28 U.S.C. § 1367.

3

At this point, the Court concludes that Mr. Goldsmith has received all of the opportunities that law of this Circuit provides or requires for amendatory activity, *Grayson*, 293 F.3d at 109–10, 114 nn.10–11, so that line will be drawn here, and now. No more amendments, absent the showing of good cause based on newly discovered (and previously undiscoverable) evidence or a change in the intervening law by the Congress, the United States Supreme Court, or our Court of Appeals. The Court will now proceed with its analysis in that vein.

### III. DISCUSSION

#### A. Conspiracy

If there is a federal claim involved in this case at all, it must arise under a federal statute or the Constitution. The only transaction or occurrence that can plausibly support any such Constitutional claim is that there was some sort of conspiracy between Lucey, the County Sheriff's office, and a supervisor from the County Health Department that was allegedly present at the eviction, to allow a KDKA reporter/videographer to enter Mr. Goldsmith's apartment "under color of state law" when the Sheriff evicted him. *Hanlon v. Berger*, 526 U.S. 808 (1999); *Wilson v. Layne*, 526 U.S. 603 (1999).

As to Lucey, Plaintiff now seems to assert[6] that she pre-arranged with the Sheriff's Office, the Health Department Supervisor (Chongaway) and KDKA-TV for a KDKA-TV reporter (Griffin) and videographer (Lawson) to be present and to participate in the eviction by the Sheriff at Mr. Goldsmith's apartment. That *could* plausibly state a claim for a violation of his Constitutional rights by the Sheriff, and by those that had conspired with the Sheriff. The Court will deem the Complaint amended as to Deputy Richard Shim, another Defendant, based on ECF

---

[6] This Court previously dismissed this action, with prejudice, as to Ms. Lucey, ECF No. 2, because Plaintiff's assertions against her offered no support for a claim, nor any plausible hope that such could be found after an amendment. As noted below, as to certain claims now asserted as to her, Plaintiff has crossed the plausibility threshold, but only barely.

4

Nos. 72 and 74, on the basis of Plaintiff's very loose assertions that Deputy Shim has now been identified by Mr. Goldsmith as a Deputy actually involved in the eviction and by extension, the alleged conspiracy. That is enough, just barely, to state a plausible claim. Because the asserted state law claims for invasion of privacy against them arise from the same nucleus of operative fact, that too may proceed to the next step.

### B. Claims to be Dismissed with Prejudice

Mr. Goldsmith names several parties that appear to have no connection to any clam his Amended Complaint can be construed to plausibly make. These parties and the claims against them will, as explained in the following paragraphs, be dismissed with prejudice.

Mr. Goldsmith also makes vague relationship allegations against Ms. Lucey's mother and father, Robert and Margaret Lampenfeld, without in any way tying them into the publicized eviction activities or any plan to carry it out. Robert and Margaret Lampenfeld will therefore be dismissed from the action, with prejudice, as will all claims against them.[7]

Mr. Goldsmith next makes similar vague and factually unsupported claims against Jonathan and Virginia Rhoads as the managers of the apartment building, but again he makes no connection between them and the eviction and publicity about it, plausible or otherwise. They, too, will be dismissed from the action with prejudice, as will all claims against them.

Mr. Goldsmith also asserts that one David Tkacik, a lawyer, is a Defendant, but makes no specific allegations of a legally or factually supported claim against him, asserting only that he was Lucey's lawyer. He in no way ties him into any alleged publicity/eviction conspiracy, and he too, will be dismissed from the case with prejudice, as will all claims against him.

---

[7] Given that Plaintiff has been given leave to amend his initial Complaint, and he has done so (and has proffered yet another amendment which has been considered by the Court), the Court believes that it has more than fulfilled the "leave to amend" rule set forth by our Courts of Appeals in *Grayson*.

5

Plaintiff has also sued an Allegheny County Health Department social worker, Ginni Leary, but never says what she personally did that was illegal or violative of his federal or state law rights and certainly does not tie her into any alleged conspiracy to violate his Constitutional rights, so she too will be dismissed from the action with prejudice, as will all claims against her.

Plaintiff has also sued two news anchors for KDKA-TV, Messrs. Stacy Smith and Ken Rice, but does not tie them into any alleged conspiracy to allegedly "invade" his apartment in any way, other than their being part of the television broadcast(s) as anchors (back at the television studio) of a news story about his eviction. He states no plausible claim against either of them, and they too will be dismissed from the action with prejudice, as will all claims against them.

As to the governmental Defendants, Plaintiff sues the Allegheny County Health Department (and its employees Richard Chongaway and Ginni Leary), but does not tie that unit of Allegheny County government (or its employee Leary) into the alleged conspiracy other than by general averments as to actions by Chongaway and even less so, Leary, ECF No. 29 at 13, nor into the state law claims which are based on the broadcast by KDKA-TV of the condition of his apartment and his eviction. That Department will therefore be dismissed from the action with prejudice, as will Leary, as will all claims against them.[8]

Plaintiff also sues Richard Fersch, a Deputy of the Sheriff's Office. Richard Fersch is, as Mr. Goldsmith concedes, dead, and all claims against him will be therefore dismissed, with prejudice.[9]

---

[8] Plaintiff cannot, of course, invoke *respondeat superior* as a basis of liability against the County based on the actions of Chongaway. As to Chongaway, he pleads that Chongaway was present at the eviction and participated in its television broadcast. ECF No. 29 at 22.

[9] Mr. Goldsmith also sues Deputy Richard Shim. As already explained, the Court will deem the Complaint amended as to Deputy Shim based on ECF Nos. 72 and 74. The Plaintiff has asserted that Deputy Shim was the Deputy actually involved in the eviction and the alleged conspiracy.

As to the Allegheny County Sheriff's Office itself, the papers filed by the Plaintiff are utterly devoid of any sufficient or plausible allegations that any of the federal claims that Plaintiff asserts are the fruit of a custom, policy or practice of that unit of local government sufficient to allow those assertions to go forward. *Respondeat superior* is not a basis for constitutional liability of such a government unit actionable under 42 U.S.C. § 1983. *Fagan v. City of Vineland*, 22 F.3d 1283, 1291 (3d Cir. 1994) ("There is no *respondeat superior* liability under section 1983."). Vague generalities and baseless aspirations are not the standard by which even liberally-construed federal *pro se* pleadings are to be judged, and all such claims will therefore be dismissed with prejudice. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). It, and all claims against it, will be dismissed with prejudice from the case.

## C. **Hoarding**

As to the balance of Plaintiff's federal statutory claims, a review of the Amended Complaint reveals that Plaintiff has (vaguely) alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the Fair Housing Amendments Act ("FHA"). Plaintiff has sued his landlord, Lucey, under the Americans with Disabilities Act ("ADA"), now asserting for the first time that he (Goldsmith) is a hoarder,[10] that he is therefore

---

[10] "Hoarding Disorder" was added to the DSM V because "there is evidence for the diagnostic validity and clinical utility of a separate diagnosis of hoarding disorder, which reflects persistent difficulty discarding or parting with possessions due to a perceived need to save the items and distress associated with discarding them." *See* American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5, at 7–8 (2013), http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf.

What is perhaps the most iconic story of hoarding in the United States dates back to the 1940s:

> New Yorkers who grew up in the mid 1900s surely remember the Collyer brothers. The famous brothers filled their brownstone mansion with 130 tons of newspapers, possessions, and junk. Homer was a blind and paralyzed lawyer who was completely dependent on his sibling, Langley, a failed pianist. Because Langley feared home intrusion, he riddled the interior of the mansion with a framework of mazes and tunnels fixed with booby traps. In the end, Langley triggered one of his own traps and was crushed to death by toppling debris. In 1947, police found both brothers, Langley (age 61) and Homer (age 64), dead in their mansion. Homer died from starvation just ten feet from where his brother lay dead, buried under junk.

7

"disabled" under those statutes, and that Lucey owed him the "reasonable accommodation" of providing him even more space in the apartment building for all of his stuff, because it was his disability that caused him to accumulate and hoard it. ECF 29, at 15–16. He further claims that his eviction was retaliation in violation of the ADA for his opposition to her not giving him more space in the building. *Id.* at 17. He also makes a similar claim of a violation of FHA, asserting that his eviction constituted unlawful housing discrimination against him based on a "handicap." *Id.* at 19–20.

Mr. Goldsmith cites no law to support his claims. A summary of the general law governing these claims can be found in *Brooker v. Altoona Hous. Auth.*, No. 11-95, 2013 WL 2896814 (W.D. Pa. June 12, 2013):

> A plaintiff attempting to establish a violation of the FHAA, the Rehabilitation Act or the ADA must demonstrate that his or her disability could have been reasonably accommodated. *See Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 233–35 (3d Cir. 2000). The reasonableness of a proposed accommodation is a question of fact. *Buskirk v. Apollo Metals*, 307 F.3d 160, 170–71 (3d Cir. 2002). When the failure of a public housing agency to conduct the "individualized assessment" contemplated under the applicable regulations results in the eviction of an individual whose handicap or disability could have been reasonably accommodated, an actionable statutory violation occurs. *Sinisgallo*, 865 F.Supp.2d at 336. This principle flows from the fact that a covered entity's refusal to reasonably accommodate the needs of handicapped and disabled individuals constitutes a prohibited form of "discrimination." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729, (1995). No violation occurs, however, if an individual's disability could not have been reasonably accommodated in any event. *Mengine v. Runyon*, 114 F.3d 415, 420–21 (3d Cir.1997). The statutes requiring covered entities to

---

Because of the extreme state of clutter, the mansion was "declared a public nuisance and torn down in 1947," eventually becoming a public space designated "'Collyer Brothers Park.'" The Collyer brothers became iconic hermits, and the source of the 1950s goad, "[c]lean up your room or you'll end up like the Collyer brothers!" To the public, the Collyer brothers have become synonymous with hoarding, from firefighters using the term "Collyer mansion" to describe dangerous debris filled sites, to psychiatrists and courts "refer[ring] to compulsive hoarding as 'Collyer Brothers Syndrome.'"

Keith P. Ronan, *Navigating the Goat Paths: Compulsive Hoarding, or Collyer Brothers Syndrome, and the Legal Reality of Clutter*, 64 Rutgers L. Rev. 235, 244-45 (2011) (footnotes omitted). The current cultural ubiquity of the term "Hoarders" can perhaps be attributed to A&E's eponymous documentary series, which profiled interventions with hoarders. The show ran for six seasons with a total of 84 episodes. *Hoarders* (A&E television broadcast Aug. 17, 2009 – Feb. 4, 2013), *available at* http://www.aetv.com/hoarders.

accommodate the needs of disabled individuals do not "demand action beyond the realm of the reasonable." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 401 (2002).

"Failure-to-accommodate" claims arising in the housing context must be considered in accordance with a burden-shifting framework. *Sharpvisions, Inc. v. Borough of Plum,* 475 F.Supp.2d 514, 526 (W.D. Pa. 2007). The contours of that framework were established by the United States Court of Appeals for the Third Circuit in *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir.1996), and *Lapid–Laurel, L.L.C. v. Zoning Board of Adjustment,* 284 F.3d 442 (3d Cir.2002). In *Hovsons,* the Court of Appeals held that a defendant alleged to have violated the FHAA by failing to accommodate a handicapped person's disability bears the burden of establishing the unavailability or unreasonableness of an accommodation that would have enabled that person to use and enjoy a dwelling on terms equal to others. *Hovsons,* 89 F.3d at 1103–04. The Court of Appeals later explained, in *Lapid–Laurel,* that "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." *Lapid–Laurel,* 284 F.3d at 457.

> In order to satisfy her initial burden, [the plaintiff] must establish a nexus between the reasonable accommodations that she was seeking and their necessity for affording her an equal opportunity to enjoy public housing. *McKivitz v. Township of Stowe,* 769 F.Supp.2d 803, 825–826 (W.D. Pa. 2010). A proposed accommodation cannot be said to be "necessary" if it "provides no direct amelioration of a disability's effect." *Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir.1997).

*Id.* at *12–13.

Further, other courts have indicated that a plaintiff must actually request an accommodation:

> In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.,* 418 Fed.Appx. 872, 875 (11th Cir.2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

*Kromenhoek v. Cowpet Bay W. Condo. Ass'n,* No. 2012-25, 2014 WL 7384784, at *4 (D.V.I. Dec. 24, 2014). If the plaintiff is then denied an accommodation after the formal request, he may then bring a claim under the FHA. *Id.*

9

For the purposes of the analysis at this stage of the game, Mr. Goldsmith has alleged enough in his Amended Complaint to save his FHAA and ADA claims for now because he alleges that he made "repeated requests" that his landlord Lucey accommodate his "perceived disability" as a hoarder by giving him (Goldsmith) "additional time and additional storage space to help reduce some non-essential surplusage and packing boxes/materials within the apartment, even if only by opportunity to pay an additional rent charge for the accommodation of storage in the otherwise empty basement area." ECF No. 29, at 16–17. This claim will survive against the only Defendant against whom it could survive: his landlord, Lucey. The Court need not, and will not, go further at this point in discussing the potential merits of those claims.[11]

### D. Supplemental State Law Claims to be Dismissed

The Plaintiff next alleges the tort of "tabloid outrage". That is a new one on this Court, and Plaintiff cites to no statutory or case law support for the definition, elements, existence or the standing of any such claim under state or federal law, and it is therefore dismissed with prejudice.

As to the asserted state law claim for conversion, as to which there is no independent basis for the assertion of federal jurisdiction as to any Defendant, the Court concludes that to the extent the claim as asserted states a claim coming within this Court's supplemental jurisdiction, 28 U.S.C. § 1367, it would be improvident to assert that supplemental jurisdiction over such a purely state law claim, and it will be dismissed without prejudice.

---

[11] Given the very large holes in the § 1915 sieve, the Court is constrained to allow this hoarding-based claim to seep through to the next stage of the case. The Court is *not* in any way concluding that limits of the FHAA and the ADA can be stretched so far as to cover a "hoarding disability." To the contrary, the Court is merely concluding that it cannot say that in no case (and under no circumstances) could hoarding constitute a disability for these purposes. It will be up to the crucible of the adversary system to determine whether Mr. Goldsmith's mountain of belongings and other stuff can be the *terra firma* on which a disability claim is based.

The same is the necessary action as to the asserted state law claims for a breach of warranty of habitability and for the covenant of quite enjoyment. Those claims, if anything, attack the eviction of the Plaintiff only under Pennsylvania state landlord/tenant law. They appear to the Court to have already been the subject of extensive state court litigation, and prolix litigation in our Bankruptcy Court, and in any event, are so distant to the alleged conspiracy to violate federal civil rights (or claimed violations of the ADA or the FHA) so as to make it improvident for this Court to exercise supplemental jurisdiction over them, and they are to dismissed without prejudice as to all Defendants. 28 U.S.C. § 1367(a), (c).

The Plaintiff's intentional infliction of emotional distress claim is simply a generalized broadside as to all Defendants and as to everything supposedly done by anyone named in this lawsuit. Plaintiff provides no specific causal basis as to such a claim as to a particular Defendant, nor specification of the necessary level of outrageousness necessary under Pennsylvania law to support it. Plaintiff having been given the opportunity to amend already, it is proper to dismiss this claim with prejudice due to its failure to state any plausible claim from relief as to any Defendant. This same conclusion is also appropriate as to the alternative claim for negligent infliction of emotional distress.

## IV. CONCLUSION

What, and whom, does that now leave in the case? To restate, except as to claims which the Court has specifically stated may proceed further and those specifically dismissed without prejudice due to the Court's declination of supplemental jurisdiction, all claims, against all Defendants, are otherwise dismissed with prejudice, all of which leaves the following to proceed to the next step in this Court:

(a) A claim for Conspiracy under § 1983 and Pennsylvania law as to Defendants Lucey, Shim, Chongaway, and Griffin.

(b) State law claims for Invasion of Privacy by False Light and Intrusion Upon Seclusion as to Lucey, Shim, Chongaway, Griffin, Lawson, and the "CBS Defendants" (CBS Corporation, CBS Broadcasting Pittsburgh, KDKA TV, and KDKA Radio).[12]

(c) Claims under the ADA and the FHAA against Lucey.

To be clear, this Court's notation that the above-stated claims (as to the specified Defendants) may proceed forward, at least a bit further, is no more than this Court's preliminary assessment under 28 U.S.C. §§ 1915 and 1915A that they are plausibly enough stated to survive this Court's initial screening obligations, and nothing more. Each remaining Defendant may file either an Answer, or a Motion under Fed. R. Civ. P. 12, as to any remaining claims without limitation, which will then be considered on its own merits.

Finally, the Plaintiff has requested that this Court order that service be accomplished by the Marshal. While that is an expense and process that would normally be avoidable, in the Court's estimation, it should be done here, given the complexity that the Plaintiff's efforts at service have previously entailed, and because such a process will provide the remaining parties with certainty as to where the case stands as it proceeds. Therefore, the Court will order that the Marshal make service of the Documents at ECF Nos. 29, 71 and 72 in this civil action upon the CBS Defendants, Griffin, Shim, Lucey, Chongaway and Lawson, once Plaintiff has provided the necessary service direction to the United States Marshal.

---

[12] There is no basis alleged to assert any § 1983-based liability as to any CBS Defendant or Lawson. Mr. Goldsmith makes no plausible allegation supporting Lawson's involvement in any conspiracy other than his simply showing up as the television station's videographer. That is insufficient to state a plausible conspiracy claim as to him. Further, there is no legally sufficient, plausible basis alleged to hold any of the CBS corporate Defendants liable for any alleged conspiracy to violate federal rights, and there is no plausible basis stated for finding that organizationally, they participated in any alleged conspiracy, or that it resulted from any custom, practice, policy or usage having its genesis in corporate policy.

An appropriate Order will be entered.

_____
Mark R. Hornak
United States District Judge

Dated: March 26, 2015

cc: All counsel of record